UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRENDA BERTOLINI | : |
| VS. | : CIVIL NO. |
| MUTUAL OF AMERICA LIFE INSURANCE COMPANY | : APRIL 29, 2019 |

### COMPLAINT

1. This is an action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§ 60a-46(a)(1), 60a-46(b)(1) and 46(b)(7), to redress the deprivation by the defendant of rights secured to the plaintiff by the laws of the United States. The defendant discriminated against the plaintiff in employment on the grounds of her sex and her pregnancy and related physical needs.

2. Jurisdiction of this court is invoked under the provisions of Sections 1331, 1343(3), and 1367(a) of Title 28 of the United States Code.

3. During all times mentioned in this action, the plaintiff was, and still is, an adult female citizen of the United States residing in the State of Connecticut.

4. During all times mentioned in this action, the defendant was and is an insurance company based in New York City and licensed to engage in the

1

insurance business in the State of Connecticut. It is and at all relevant times was an employer within the meaning of the aforesaid statutes and at all relevant times employed more than one hundred individuals.

5. The plaintiff has complied with all of the procedural prerequisites to suit under the statutes aforementioned, having filed timely complaints of employment discrimination with the United States Equal Employment Opportunity Commission and the Connecticut Commission on Human Rights and Opportunities and having received a Right to Sue Letter issued by the United States Equal Employment Opportunity Commission on April 29, 2019, and a Release of Jurisdiction issued by the Connecticut Commission on Human Rights and Opportunities on April 26, 2019.

6. During her more than fifteen (15) years with the defendant, the plaintiff served as both a Group Account Representative and, most recently since 2008, Participant Account Executive in the defendant's Hartford and Los Angeles territories. She was employed at the defendant's Hartford office at the time of the events described below.

7. During her time in the defendant's Hartford office, the plaintiff was one of the company's largest producers in the area and her significant contributions were recognized at the defendant's national level. She was asked to speak to hunderds of her colleagues from across the country at the National Sales

Case 3:19-cv-00646-RNC   Document 2   Filed 04/30/19   Page 3 of 7

Conference, an event held only once every three years. Following her presentation, she was asked to sit on a panel of her peers to help establish better processes and increase success for newly hired PARS.

8. Early in 2017, a co-worker in the plaintiff's office began engaging in threatening behavior toward her. The plaintiff reported this to superiors on March 7, 2017. She was told to "rise above it."

9. On March 27, 2017, the plaintiff informed her supervisor and his supervisor that she was pregnant with her first child. During that conversation, she again expressed concerns for her safety relating to the threatening behavior of the co-worker. She was told that she should be "focusing on motherhood" rather than on the conduct of her colleague.

10. The plaintiff subsequently reported to the defendant's Human Resources Department that the colleague's behavior had negatively affected her blood pressure and that this was potentially endangering her pregnancy. The defendant still took no action.

11. Contemporaneously with these events, another employee resigned because of the same colleague's threatening and abusive behavior in the workplace and another went on extended medical leave for the same reason. Nevertheless, in June 2017 the plaintiff was given an annual review in which, for the first time in her career, she was given a rating of only 3 out of 5 in the

3

category of "teamwork and cooperation" based on her allegedly "unprovoked" complaints about the colleague.

12. On July 13, 2017, the plaintiff was threatened with termination because of her complaints about the colleague.

13. The plaintiff left work on maternity leave on September 25, 2017, and her baby was born on October 23, 2017. She returned to work on March 15, 2018, after having used up all of her vacation and sick time.

14. On February 28, 2018, the plaintiff notified her supervisor in writing that she would be returning to work and would need accommodations for expressing milk for her baby.

15. When the plaintiff returned to work on March 15, 2018, she realized that no arrangements had been made to afford her any privacy for expressing milk, although such arrangements had been made in the past for colleagues in other offices of the defendant and the total cost was less than five hundred dollars. The plaintiff objected that she was in an office with clear glass walls and the New York corporate office advised her to call a local company to install window blinds. She did so immediately. Meanwhile, arrangements were made to "frost" the glass walls of a conference room pending arrival of window blinds. While that process was taking place, paper was affixed to the glass walls of the plaintiff's office.

16. On April 6, 2018, the "frosting" of the conference room windows was completed and on that day the plaintiff's supervisor instructed the office receptionist to remove the paper coverings from the glass walls in the plaintiff's office. However, the "frosting" did not provide adequate privacy for the plaintiff and a coworker was assigned to use that room at the same time as a temporary office. As a result, the plaintiff was forced to leave the office and pump at home. Upon her return, she was reprimanded for leaving the office without permission.

17. Over the weekend of April 7-8, 2018, the plaintiff developed hives from the stress caused by the above events.

18. When the plaintiff returned to work on April 9, 2018, she explained her situation to her supervisor, who agreed that the "frosting" was not adequate. The plaintiff explained to him that the lack of a permanent safe place to pum was causing her to suffer severe anxiety and hives.

19. On April 10, 2018, the plaintiff woke up with hives covering her face and neck. Her physician put her on a steroid. When she returned to work on April 18, she discovered that once again the paper coverings on her glass walls had been removed and that a freestanding screen had been put up. The screen had gaps which permitted others to watch the plaintiff.

20. On April 19, 2018, the plaintiff's physician, who had been advised of the plaintiff's workplace difficulty in being afforded a private place to pump and

observing her reaction thereto, recommended that the plaintiff be placed immediately on a medical leave of absence.

21. The plaintiff returned from her medical leave on July 3, 2018. Contemporaneously with these events, she was notified that she was expected to reach all of her objectives and goals for the year despite being out on maternity leave for the first ten weeks of the year.

22. In the manner described above, the defendant subjected the plaintiff to disparate treatment and a hostile working environment because of her gender and her pregnancy and the circumstances associated therewith, all in violation of the statutes described above.

WHEREFORE, the plaintiff claims judgment against the defendant as follows:

A. Compensatory damages in an amount this court shall consider to be just, reasonable and fair;

B. Punitive damages in an amount this court shall consider to be just, reasonable and fair;

C. Attorney fees and the costs of this action;

D. Such other relief as this court shall consider to be fair and equitable.

**The plaintiff claims trial by jury.**

THE PLAINTIFF

BY: _____/s/_____(ct00215)_____
      JOHN R. WILLIAMS (ct00215)
      51 Elm Street
      New Haven, CT 06510
      203-562-9931
      Fax: 203-776-9494
      jrw@johnrwilliams.com